IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| George Leslie Hall, Jr.<br><br>Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security,<br><br>Defendant. | CASE NO. 5:22-cv-2156<br><br>DISTRICT JUDGE<br>David A. Ruiz<br><br>MAGISTRATE JUDGE<br>James E. Grimes Jr.<br><br>**REPORT &<br>RECOMMENDATION** |

Plaintiff George Leslie Hall, Jr. filed a complaint against the Commissioner of Social Security seeking judicial review of its decision denying supplemental security income and disability insurance benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend the District Court affirm the Commissioner's decision.

## Procedural background

In December 2020, Hall filed applications for supplemental security income and disability insurance benefits alleging a disability onset date of November 15, 2014, due to gout,[1] right ankle pain, ulcers, depression, anxiety,

---

[1] Gout is a common, painful form of arthritis. *Gout*, MedlinePlus Encyclopedia from the National Library of Medicine, https://medlineplus.gov/gout.html [https://perma.cc/H6WA-QZ9C]. Gout

and bipolar disorder. Tr. 167, 184, 187. The Commissioner denied Hall's applications at the initial level and upon reconsideration. Tr. 56–66, 76–86. In October 2021, an Administrative Law Judge (ALJ) held a hearing at which Hall and a vocational expert testified. Tr. 32–55. One month later, the ALJ issued a written decision finding that Hall was not disabled. Tr. 15–27. The ALJ's decision became final in September 2022, when the Appeals Council declined further review. Tr. 1–6; *see* 20 C.F.R. § 404.981. Hall filed this action in December 2022. Doc. 1. In it, he asserts that the ALJ's "determination is a product of legal error and unsupported by substantial evidence" because the ALJ "failed to properly consider [Hall's] subjective reports of gout flare-ups" and "this error permeated the remainder of the decision." Doc. 9, at 1, 7.

## Factual background

### 1. *Personal and vocational evidence*

Hall was born in November 1969 and was 45 years old on his alleged disability onset date. Tr. 174, 270. He has a high school education and no prior relevant work. Tr. 26, 188.

---

occurs when uric acid builds up in the blood. *Id*. Gout causes inflammation in the joints and often first attacks the hallux, or big toe. *Id*. Gout can also attack ankles, heels, knees, wrists, fingers, and elbows. *Id*.

2. *Medical evidence*[2]

In April 2015, Hall established care with Diana L. Brewster, D.O., for a yearly physical exam. Tr. 693. Hall reported experiencing intermittent swelling in his hands and feet in flare-ups that typically lasted for "4–5 days" and resolved on their own. *Id*. Dr. Brewster conducted an examination and found that Hall had "left upper extremity swelling" with bulging veins though no pitting. Tr. 694. Hall's wrist and hand were hot to the touch, erythematous,[3] and tender. *Id*. His radial pulse was good. *Id*. Hall had no edema in his lower extremities. *Id*. Dr. Brewster prescribed an antibiotic. *See* Tr. 697. Hall had a follow-up with Dr. Brewster two weeks later, at which time he reported that he still had some swelling in his left wrist but the pain was gone. Tr. 697. In August 2015, Hall saw Dr. Brewster for a follow-up during which he complained of swelling in his right hand and left wrist. Tr. 516, 520.

Hall next saw Dr. Brewster a year and a half later in February 2017 with a primary complaint of pain in his left wrist. Tr. 507. Hall said that the pain—which began five days earlier without any precipitating injury—was constant and sharp with moderate intensity. *Id*. It was aggravated by flexion and extension and alleviated by rest. *Id*. Hall also mentioned that for two days, he had experienced constant, moderate pain in his left ankle which was aching

---

[2]    This recitation of medical evidence is not intended to be exhaustive. It is limited to relevant facts that were submitted by the parties in their briefs.

[3]    Erythema is "redness of the skin produced by congestion of the capillaries." Dorland's Illustrated Medical Dictionary 505 (33rd ed. 2020).

and sharp and accompanied by swelling. Tr. 507. Bearing weight aggravated the ankle pain, which Hall rated at an "8" out of ten in intensity. *Id*. Dr. Brewster found pain upon palpitation of Hall's left ankle and left wrist. Tr. 756. Both joints had full active and passive ranges of motion. *Id*.

At a follow-up in May 2017, Hall complained of pain and swelling in his left ankle that began six days earlier. Tr. 766. Dr. Brewster found erythema and edema in Hall's left ankle and edema in the first metatarsophalangeal joint[4] of his right foot. Tr. 768. The pain—constant, moderate in intensity, aching, and sharp—radiated to Hall's heel and was aggravated by bearing weight. *Id*. The swelling was moderate and diffuse. *Id*. That October, Hall reported a gout attack for which he'd taken two Prednisone. Tr. 578. The steroids helped resolve Hall's gout. *Id*. Dr. Brewster conducted a physical examination with unremarkable results. Tr. 579.

Hall experienced two flare-ups in 2018. In January, Hall reported an attack in his right foot that caused pain and swelling. Tr. 788. Tylenol resolved the gout after three days. Tr. 499. Dr. Brewster observed mild edema in Hall's right foot. Tr. 790. Dr. Brewster's treatment notes record the episodic nature of Hall's gout attacks, which she described as severe in intensity, variable in duration, and treatable with Prednisone. Tr. 788. Hall reported a frequency of

---

[4]    The metatarsus is the part of the foot between the midfoot and toes. Dorland's 1129. Metatarsophalangeal refers to the "metatarsus and the phalanges of the toes." *Id*. So the first metatarsophalangeal joint is the joint at the base of the big toe.

one gout attack every couple of months. *Id*. In August 2018, Hall reported a gout flare-up that he had "just let … run [its] course." Tr. 554, 556. It had lasted for three days. Tr. 554.

Hall had three flare-ups in 2019. *See* Tr. 807, 811, 515. The first was in January. Tr. 807. In May, Hall had an attack in his right ankle and toes. Tr. 811. In August, Hall had an attack in his left wrist. Tr. 815.

In 2020, Hall's gout flared up twice. *See* Tr. 841, 861. Hall treated the first attack, in February,[5] with oral Prednisone. Tr. 841. An injection of steroids into Hall's thumb resolved the second, which occurred in December. Tr. 861.

In June 2021, Hall's gout flared up in his left toe. Tr. 845. Hall treated it with Tylenol, which helped. *Id*. Hall asked Dr. Brewster for a Prednisone refill so that he would have it available for future "bad" episodes. *Id*.

---

[5]      The Commissioner refers to a flare-up in March 2020, however, as Hall points out, in March 2020, Hall had an appointment with Dr. Brewster during which he reported having had the attack a month earlier. *See* Doc 9, at 5; Doc. 11, at 4; Tr. 861.

### 3.  *State agency and other medical opinion evidence*[6]

In February 2021, state agency consulting physician Lynne Torello, M.D., found that despite several severe impairments, including gout, Hall retained the residual functional capacity (RFC)[7] to occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand or walk for about six hours, and sit for about six hours. Tr. 63. Dr. Torello found that Hall was capable of performing labor at a medium level of exertion. Tr. 66.

In May 2021, state agency consulting physician Linda Hall, M.D., reviewed the medical evidence upon reconsideration and adopted Dr. Torello's findings, including the opinion that Hall had the RFC to perform work at a medium exertional level with additional limitations. Tr. 82–83, 85.

---

[6]     When a claimant applies for disability benefits, the state agency creates a record. The record includes the claimant's medical evidence. A state agency disability examiner and a state agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the state agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the state agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[7]     An RFC is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

### 4. Testimonial evidence

Hall and a vocational expert testified during the hearing in October 2021. Tr. 32–55. Hall was represented by attorney Michael Borowski. Tr. 32.

Hall testified that he lived with his mother. Tr. 41. He did not have a driver's license and had not driven in at least four years. Tr. 41. Hall described having a gout flare-up every two months that lasted for four days. Tr. 43. He treated his gout pain with Tylenol and Prednisone and "tr[ied] to take it easy and stay off [his] feet." *Id*. During the day, he read the paper, watched the news, and took walks. Tr. 46. His mother handled the cooking. Tr. 47. He washed his own clothes and did the dishes. Tr. 46. Hall last worked six months before the administrative hearing for about six months. Tr. 42, 48–49. During that period, Hall had one gout attack that lasted for four days. Tr. 49. He called in sick and "never went back." Tr. 42, 49.

After Hall, vocational expert Marnie South testified. Tr. 49–54. According to South, a hypothetical individual with the same age, education, and work experience as Hall, with the limitations assessed in Hall's RFC, described below, could perform light, unskilled labor such as a marker, router, or garment sorter. Tr. 52. Being absent more than once a month would preclude such an individual from all work. Tr. 53.

7

**The ALJ's decision**

The ALJ made the following findings of fact and conclusions of law

1. The claimant meets the insured status requirements of the Social Security Act (the "Act") through June 30, 2019.

2. The claimant has not engaged in substantial gainful activity since November 15, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: gout, thrombocytopenia, hypertension/chronic heart failure thyroid disorder, bipolar disorder, schizoid personality disorder, and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or a combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR404.1567(c) and 416.967(c), except that the claimant may never climb ladders, ropes or scaffolds; the claimant is limited to the performance of low stress work, defined as precluding tasks involving arbitration, negotiation, confrontation, sales, directing the work of others or bearing responsibility for the safety and welfare of others, conducted in a setting free of "piece-rate" work or assembly line work, which setting requires no more than occasional interaction with others, which setting contemplates that workplace changes would be explained in advance of gradual implementation.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

8

7.  The claimant was born on November 1, 1969 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

12. The claimant has not been under a disability, as defined in the Social Security Act, since March 4, 2020, the date the application was filed (20 CFR 416.920(g)).

Tr. 12–27.

## Standard for disability

Eligibility for benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a, 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a

disability determination:

1. Is the claimant engaged in substantial gainful
   activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable
   impairment, or a combination of impairments, that
   is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of
   the listed impairments and meet the duration
   requirement? If so, the claimant is disabled. If not,
   the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity,
   and can the claimant perform past relevant work? If
   so, the claimant is not disabled. If not, the ALJ
   proceeds to the next step.

5. Can the claimant do any other work considering the
   claimant's residual functional capacity, age,
   education, and work experience? If so, the claimant
   is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 404.1520. Under this sequential analysis, the claimant

has the burden of proof at steps one through four. *Walters v. Comm'r of Soc.*

*Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner

at step five to establish whether the claimant has the vocational factors to

perform available work in the national economy. *Id.* If a claimant satisfies each

element of the analysis and meets the duration requirements, the claimant is

determined to be disabled. *Id.*

10

## Standard of review

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152.

A court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "'zone of choice within which'" the Commissioner can act, without fear of court "'interference.'" *Mullen v.*

*Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

## Discussion

*Whether the ALJ properly applied Social Security Ruling (SSR) 16-3p when evaluating Hall's subjective reports of gout and gout flare-ups.*

The ALJ acknowledged in his decision that gout was one of Hall's several severe impairments. Tr. 18. As a result of gout, Hall had deficits in his ability to lift and climb. Tr. 21 (citing Tr. 59, 202). The ALJ found, however, that Hall's gout impairment—alone and in combination with his other impairments—did not preclude Hall from all work. Tr. 22. The ALJ determined that the intensity and persistence of Hall's symptoms did not limit Hall's ability to perform work-related activities to the extent that he would not be able to work. Tr. 24. Hall claims that the ALJ formed the RFC without sufficient consideration of the frequency and duration of his gout flare-ups. Doc. 9, at 8–9, 10. Hall argues that this was an error in contravention to SSR 16-3p's requirements that an ALJ must provide specific reasoning for his or her findings and support each conclusion with substantial evidence. *Id*. at 8–10; *see* SSR 16-3p Titles II And XVI: Evaluation Of Symptoms In Disability Claims Social Security Ruling 16-3p Titles II And XVI: Evaluation Of Symptoms In Disability Claims, 82 Fed. Reg. 49,462 (Oct. 25, 2017).

SSR 16-3p provides "a two-step process for evaluating an individual's symptoms." 82 Fed. Reg. at 49,463. At step one, the ALJ should "determine whether the individual has a medically determinable impairment (MDI) that

12

could reasonably be expected to produce the individual's alleged symptoms." *Id*. At step two, the ALJ is to "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult or to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim." *Id*. at 49,464.

Here, the ALJ found that Hall satisfied step one. The ALJ found that Hall had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. Tr. 24. So the issue is about step two. Under step two, an ALJ should consider the objective medical evidence and other evidence, including an individual's statements, medical sources, and non-medical sources. 82 Fed. Reg. at 49,464–65. And when "evaluat[ing] the intensity, persistence, and limiting effects of an individual's symptoms," the ALJ should consider the factors in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). *Id*. at 49,465. These factors are:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id*. at 49,465–66.

The ALJ explicitly recounted the two-step analysis required by SSR 16-3p. Tr. 21. So he was plainly aware of SSR 16-3p. Throughout his analysis of the evidence, in considering Hall's gout impairment and throughout the rest of the decision, the ALJ discussed the factors in SSR 16-3p, albeit without specifically referencing each factor. *See* Tr. 21–23. The ALJ wrote, "[i]n sum, the evidence would indicate that the symptom limitations relevant to these [physical] impairments are not as severe as alleged." Tr. 23. He found that Hall's statements concerning the intensity, persistence and limiting effects of his symptoms, including those related to gout, were not entirely consistent with the medical evidence and other evidence in the record. Tr. 24.

The ALJ considered Hall's daily activities, noting that "at one point or another in the record," either in the application and appeal process, medical reports or records, or Hall's testimonial statements, Hall discussed his ability to independently perform many activities. Tr. 24. For example, Hall was able to his own self-care needs. *Id*. He completed indoor chores, such as cleaning

and some meal preparation, as well as outdoor chores, such as taking care of the yard. *Id*. Hall shopped in stores, ran household errands, and managed his own appointments. *Id*. Hall walked daily for exercise to a local park, played cards and dominoes, and socialized with friends. *Id*. (citing Tr. 197–204, 891, 893, 899, 913, and "hearing testimony.") Hall worked part-time in 2017 and 2018. *Id*. (citing Tr. 891, 894, 896, 899).

The ALJ clarified that Hall's work activity did not constitute disqualifying substantial gainful activity. Tr. 24. It did, however, indicate to the ALJ that Hall's "daily activities have, at least at times, been somewhat greater than the claimant has generally reported." *Id*. Hall described daily activities showing that, to the ALJ, that Hall was "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." *Id*. The ALJ explained that while no single activity of Hall's warranted finding that he was not disabled, when considered in aggregate, Hall's daily activities of life "strongly suggest[ed]" that he was "capable of engaging in the work activity contemplated by the residual functional capacity." Tr. 24.

The ALJ considered Hall's pain from gout. He wrote, for example, that Hall described episodes of gout that caused deficits in his ability to lift and climb. Tr. 22 (citing Tr. 59, 202). Hall's February 2021 disability report, cited by the ALJ, indicates that Hall could not squat low, bend without pain, or kneel. Tr. 59. Hall stated that his legs gave out with standing and that he climbed stairs one at a time. *Id*. In a January 2021 function report, also cited

by the ALJ, Hall checked boxes indicating that his illnesses, injuries, or conditions affected lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, seeing, concentrating, and using his hands. Tr. 202. Hall explained that he would drop things, couldn't squat low, couldn't bend without pain, couldn't stand without his legs giving out, couldn't reach, couldn't walk more than a short distance, couldn't kneel, climbed stairs one step at a time, couldn't see well because his eyes watered, couldn't concentrate at times, and that his hands were swollen and shook. Tr. 202.

The ALJ referenced the location, duration, frequency, and intensity of Hall's symptoms and the "factors that precipitate[d] and aggravate[d]" them when the ALJ noted—accurately—that Hall said that his gout was episodic and flared up every couple of months. Tr. 22 (citing Tr. 841). Dr. Brewster assessed Hall's gout as severe in intensity and noted that "the typical duration of an episode [was] quite variable." Tr. 841.

The ALJ discussed the "type, dosage, effectiveness, and side effects" of Hall's medications, noting that Hall did not treat his gout episodes with regular prescription therapy, Tr. 22 (citing Tr. 834, 846). Hall's treatment consisted instead of short courses of Prednisone that Hall took in reaction to the onset of an individual attack. Tr. 22 (citing Tr. 841). Hall's attacks occurred infrequently—once every couple of months—and the Prednisone "always help[ed]." Tr. 22 (citing Tr. 841). Also, the evidence showed that when Hall did

not treat his gout with any therapeutic intervention, his symptoms nonetheless resolved on their own after a few days. *See, e.g.,* Tr. 554.

According to Hall, the designation of Hall's gout flare-ups as infrequent was "troubling" because the ALJ only cited three flare-ups Hall experienced in January 2018, September 2019, and October 2017 while neglecting the rest of the flare-ups in the record. Doc. 9, at 8. Hall asserts that the limited citations meant that the ALJ read the record in an overly selective manner. *Id.* First, Hall's argument disregards the ALJ's decision as to the frequency of Hall's gout flare-ups, in which the ALJ adopted Hall's own estimation that Hall's gout flared up once every couple of months. Tr. 22. Second, the Sixth Circuit has said that "a[n] ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir.2006). So the ALJ did not need to directly address each flare-up in order to have fully considered Hall's gout impairment. Third, Hall experienced between zero and three attacks per year from 2015 through 2021, which is a total of ten attacks of joint pain and swelling over seven years. *See* Tr. 516, 520 (reporting flare-ups in 2015), 507, 578 (2017), 554, 788 (2018), 807, 811, 515 (2019), 841, 861 (2020), 845 (2021). Hall estimated that he had an attack every couple of months, which was slightly more frequent than the record demonstrated. *See* Tr. 841. In the decision, the ALJ nonetheless adopted Hall's estimate as the accepted frequency of gout attacks. Tr. 22. And it was reasonable for the ALJ to classify

17

an attack every couple of months as infrequent. The flare-ups were infrequent enough that Dr. Brewster declined to prescribe a preventative medication and directed Hall instead to take Prednisone as needed to address attacks individually. *See, e.g.*, Tr. 507, 578, 841. Furthermore, the ALJ cited the frequency of Hall's attacks as merely one factor among several that supported finding that Hall's gout was not severe as Hall alleged. Tr. 22. The ALJ set forth multiple other reasons to support the finding, including the effectiveness of Prednisone at relieving Hall's symptoms, Hall's normal uric acid levels, and Hall's ability to participate in a wide array of activities of daily living. Tr. 22.

The ALJ thus followed the requirements of SSR 16-3p[8] in his analysis and cited substantial evidence in the record to support his conclusions "so [that] the individual and any subsequent reviewer [could] assess how the [ALJ] evaluated [Hall's] symptoms." SSR 16-3p, 2017 WL 5180304, at *10. The ALJ's narrative details specific reasons for his findings as to gout. In contrast, Hall fails to articulate how the ALJ's conclusions are not supported by substantial evidence. Hall presents his argument based on the frequency of Hall's flare-ups as if the ALJ could not have considered the full breadth of the evidence without citing each flare-up. *See* Doc. 9, at 8. In making this—rather

---

[8]     Even if the ALJ failed to consider all the Ruling 16-3p factors, Hall's argument would still fail because "an ALJ is not required to analyze all seven factors." *Pettigrew v. Berryhill*, No. 1:17-cv-01118, 2018 WL 3104229, at *16 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018). Rather, it is sufficient that an ALJ "consider[s] the relevant evidence," *id.*, which the ALJ did.

18

speculative—argument, Hall implies that the Court should reweigh the evidence and rule in his favor. But it is not the Court's role to reweigh the evidence. *See Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x. 192, 196 (6th Cir. 2020).

## Conclusion

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: September 29, 2023

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019)