UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| GEORGE LESLIE HALL, JR., | ) | CASE NO.   5:22-CV-2156 |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| v. | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM AND ORDER |
| Defendant. | ) | |

**INTRODUCTION**

Now pending is Plaintiff George Leslie Hall, Jr.'s complaint seeking judicial review of the Commissioner of Social Security's denial of his application for supplemental security income and disability benefits. R.1. The matter was referred to Magistrate Judge James E. Grimes, Jr. for a Report and Recommendation (R&R) under Local Rule 72.2. The Magistrate Judge issued an R&R that this Court affirm the Commissioner's decision. R. 13. Plaintiff filed an objection to that R&R (R. 14), to which the Defendant responded. R. 15.

The R&R is not adopted because as explained herein the Commissioner's decision is not supported by substantial evidence. Therefore,  the matter will be remanded for further proceedings consistent with this opinion.

# FACTS[1]

Plaintiff initially sought benefits in 2020 alleging an onset of disability in 2014 arising from gout,[2] right ankle pain, ulcers, depression, anxiety and bipolar disorder. R. 13, Page ID#: 992. Plaintiff, who was born in November 1969 and was 45 years old on the alleged onset date, has a high school education and no relevant past work. *Id*., Page ID#: 993. He testified before the Administrative Law Judge (ALJ) that he did not have a driver's license and lived with his mother, spending his day reading the paper, watching the news and taking walks. *Id*., Page ID#: 998. Plaintiff worked part-time in 2017 and 2018. *Id*., Page ID#: 1006.

Plaintiff further testified that he experienced flare-up of gout every two months, with such episodes lasting for four days. *Id*., Page ID#: 998. His treating physician, however, assessed that the typical duration of each gout attack was "quite variable." *Id*., Page ID#: 1007.[3] The ALJ concluded that the Plaintiff's gout attacks were "infrequent flares" that occurred "every couple of months," and specifically found that the record as a whole "confirms my impression that the existence of this impairment would not be preclusive of all types of work." R. 8, Page ID#: 55. To support this finding, the ALJ noted that there were only three "active flares" in the record – "January 2018, with past flares in October 2017 and September 2019." *Id*.

---

[1] The Court provides only a brief overview of Plaintiff's underlying claim and prior history because Plaintiff raises only a single narrow objection to the R&R's consideration of the Commissioner's decision.

[2] As the R&R noted, "Gout is a common, painful form of arthritis. *Gout*, MedlinePlus Encyclopedia from the National Library of Medicine, https://medlineplus.gov/gout.html. Gout, occurs when uric acid builds up in the blood. *Id*. Gout causes inflammation in the joints and often first attacks the hallux, or big toe. *Id*. Gout can also attack ankles, heels, knees, wrists, fingers, and elbows. *Id*." R. 13, PageID#: 992, n. 1. (citation omitted).

[3] The ALJ did not assign any specific weight to any medical or opinion evidence. *Id.,* Page ID#: 57.

After observing that Plaintiff took no regular prescription medicine for his gout and treated each attack with short courses of Prednisone, *id.*, the ALJ summarized the opinions of the state agency medical consultants as finding that Plaintiff's gout "presents in acute fashion perhaps six times per year, and [] remains responsive to a five-day course of steroids." *Id.*, Page ID#: 58. Plaintiff was given a residual functional capacity (RFC)[4] for medium work, with additional restrictions largely pertaining to mental limitations. *Id.*, Page ID#: 53-54.

Before making the final disability determination the ALJ heard testimony from a vocational expert (VE). *Id.*, Page ID#: 60. While not quoted in either the ALJ's decision or the R&R, the VE was specifically asked how often a worker could be absent and still remain employed. *Id.*, Page ID#: 86. The VE answered that an employer "will tolerate a maximum absenteeism rate of up to one day per month." *Id*. The ALJ then concluded that Plaintiff was not disabled. *Id.*, Page ID#: 60.

The R&R found that substantial evidence supported the ALJ's conclusion that the Plaintiff retained the residual functional capacity to do medium work, and that work exists in significant numbers at that exertional level such that Plaintiff is not disabled. R. 13, Page ID#: 999-1000.

Plaintiff's objection asserts that the Magistrate Judge erred by classifying a gout attack every couple of months as "infrequent," instead of recognizing that such attacks lasting for at least several days at a time would result in Plaintiff's absence from work more than one day per month, which the vocational expert opined would preclude any work. R. 14, Page ID#: 1012.

---

[4] The R&R also correctly noted, "An RFC is an 'assessment of' a claimant's ability to work, taking his or her 'limitations … into account.' *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's 'description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239)." R. 13, PageID#: 997, n. 7 (internal citations omitted).

Plaintiff asserts that the R&R fails to "provide an adequate explanation of why the frequency and duration of [my] gout symptoms were rejected …." *Id*., Page ID#: 1013.

In response, the Commissioner makes two points: first, that the ALJ and the R&R both substantiated what was meant by "infrequent" by noting that the record showed a total of ten attacks over seven years, and finally, that whatever the actual frequency, the ALJ found that the attacks were not as severe as alleged, citing the effectiveness of the Prednisone in relieving symptoms, Plaintiff's normal uric acid levels and his ability to participate in a wide array of daily activities. R. 15, Page ID#: 1017.

## ANALYSIS

<u>Standard of judicial review of reports and recommendations</u>

Federal Rule of Civil Procedure 72(b)(3) states:

The district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to. The district judge may accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

In conducting judicial review of Social Security cases, the reviewing court is limited to ascertaining whether the Commissioner's decision is supported by substantial evidence and/or whether the Commissioner employed the correct legal standard. *Richardson v. Perales*, 402 U.S. 390, 401 (1971). Specifically, this standard requires the reviewing court to determine whether, viewing the record as whole, substantial evidence supports the finding of the ALJ. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the decision of the Commissioner, the reviewing court must affirm the decision even though it would have decided the matter differently. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1992). Moreover, the decision must be affirmed even if substantial evidence would have

supported the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

<u>Application of Standard</u>

The fundamental issue here is not whether the ALJ and then the Magistrate Judge used the proper adjective – infrequent – to describe how often Plaintiff experienced a gout episode, but whether there is substantial evidence in the record to support the conclusion that Plaintiff's gout – which manifested itself in periodic flareups - was not so severe as to preclude him from doing medium work as described in the RFC adopted by the ALJ and then relied on by the Commissioner in reaching the decision that Plaintiff is not disabled.

Initially, this inquiry starts with ascertaining what the ALJ concluded about how often these flareups occurred. To that point, the record is unclear, with the ALJ affirmatively stating in one place that the record showed only three active flareups between October 2017 and September 2019, R. 8, Page ID#: 55, while in another citing the state agency medical consultants as finding that Plaintiff's gout "presents in an acute fashion perhaps six times per year …." *Id*., Page ID #: 58. Complicating the matter further, even the R&R observes that the entire record shows that "[Plaintiff] experienced between zero and three attacks per year from 2015 through 2021, which is a total of ten attacks of joint pain and swelling over seven years." R. 13, Page ID#: 1008 (citing record). Meanwhile, Plaintiff testified that he experiences an attack "every couple of months." R. 8, Page ID#: 55. The ALJ did not explicitly reject that testimony, but rather focused on symptom severity, stating that any "symptom limitations relevant to these impairments are not as severe as alleged." *Id*., Page ID#: 56.

Thus, the ALJ's specific determination regarding the frequency of gout attacks—just three active flareups over a little more than two years—constitutes an unexplained variance from the reports from the findings of the state agency consultants, the reported evidence in the record, and

5

the Plaintiff's testimony. Although the R&R is correct that the ALJ need not address every piece of evidence in the record, R. 13, Page ID#: 1008, and that it is the ALJ, not the reviewing court, who must resolve conflicts in evidence and decide questions of credibility, *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007), nonetheless, the ALJ's reasoning must have sufficient support to "build an accurate and logical bridge between the evidence and the result." *Extine v. Commissioner*, 2023 WL 5198502, at *2 (N.D. Ohio Aug. 14, 2023 (citation omitted). Simply put, an ALJ "must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. App'x 517, 519 (6th Cir. 2011).

The ALJ's decision lacks a clear statement answering how it resolved the foundational question of how frequently Plaintiff experienced gout attacks. If the ALJ based the decision upon the finding that only three active flareups occurred over two years, then the underlying decision fails to explain why it recognized only those three attacks and not the state agency consultants' finding that attacks occurred "perhaps six times per year" or the ten gout attacks over seven years that are documented in the record.[5]

In addition to this gap in the ALJ's reasoning regarding the frequency of the gout attacks, there remains issue of whether the ALJ adequately addressed the severity of the attacks, however frequently they occurred. The R&R devotes several pages to addressing whether the ALJ adequately evaluated the intensity, persistence and limiting effects of Plaintiff's gout. R. 13, Page ID #: 1003-1010. In that somewhat lengthy passage, the R&R discusses the reasons why the ALJ concluded that Plaintiff's statements about the limiting effects of his gout flareups were not consistent with the "medical evidence and other evidence of record." *Id.*, Page ID #: 1005. Indeed,

---

[5] As noted earlier, there is also Plaintiff's own testimony of attacks every couple of months that was not directly addressed.

the limiting effects are documented in the record by Plaintiff's own testimony that his gout episodes "caused deficits in his ability to lift and climb." *Id.*, Page ID #: 1006 (quoting transcript). Likewise, the ALJ partially cited a February 2021 report from a state agency consultant that Plaintiff could not squat low, bend without pain, had legs give out while standing, and could not kneel. *Id.*; R. 8, PageID#: 92, 95. However, the ALJ and R&R did not discuss that the state agency consultant's report opined on Plaintiff's residual functional capacity and concluded that Plaintiff had exertional limitations and should be limited to what he can lift and/or carry, and further limited to standing or sitting for 6 hours in an 8-hour workday. R. 8, Page ID#: 96; R. 8, Page ID#: 48-60; R. 13.

Similarly, the second state agency reviewer noted the same difficulties with squatting, bending, standing and kneeling, (R. 8, Page ID#: 115), and reiterated the recommendation that Plaintiff has exertional limitations as to lifting and carrying, as well as to time standing and sitting. *Id*. By comparison, the ALJ's RFC finding includes only a single exertional limitation that prohibits Plaintiff from climbing ladders, ropes or scaffolds, and has no limitations on the time spent standing or sitting. *Id*., Page ID #: 53.

The ALJ's decision never addressed the limitations found applicable by the two state agency consultants. In addition, it lacks clear reasoning to support the conclusion that the attacks were "infrequent." Both the ALJ and the R&R rely on two points to determine that the "infrequent" gout attacks were not so severe to constitute any impairment to work. First, the R&R, citing the ALJ, states that Plaintiff's activities of daily living, such as doing chores, running errands and taking a daily walk, "strongly suggest" that Plaintiff is capable of engaging in work at the level contemplated by the RFC. R. 13, Page ID #: 1006. Next, the R&R, again citing the ALJ, points to the effectiveness of the Prednisone treatment in "relieving [Plaintiff's] symptoms"

7

as evidence showing the gout flareups did not create an impairment to employment. *Id*., Page ID #: 1009.

The references to Prednisone treatments, however, create more questions than they purport to answer. Just as the record here is unclear regarding how frequently Plaintiff experienced gout flareups, it is equally unclear in explaining how the Prednisone operated to relieve a flareup. While there is evidence in the record that these treatments lasted up to five days each time they were administered, *id*., Page ID#: 58, there is no indication whether Plaintiff was substantially affected in any work-related capacity during any or all of those days. While the evidence strongly suggests that Plaintiff's gout flareup was "responsive" to a five-day course of treatment, *id*., there is nothing indicating whether Plaintiff would be capable of working during some, none or all of the days he is receiving treatment. The ALJ's implicit assumption in this regard lacks sufficient explanation.

Next, there is the matter of relying on Plaintiff's daily activities as substantial evidence that he retained the ability to work at the level of the RFC despite his gout attacks. While it is true that a claimant's activities of daily living can be used to support the formulation of an RFC, *Tillman v. Commissioner*, 2021 WL 1176787, at *4 (N.D. Ohio March 29, 2021)(citation omitted), it is also true that merely pointing to activities of daily living, done outside of the demands of a workplace, "do[es] not necessarily show that the claimant can perform the activity consistently as is the case with regular employment." *Ruch v. Commissioner*, 2021 WL 1214826, at *3 (N.D. Ohio March 13, 2021) (citing *Gayheart v. Commissioner*, 710 F.3d 365, 377-78 (6th Cir. 2013)).

Here, the caution needed before relying on Plaintiff's daily activities to support his ability to work despite gout attacks is plainly lacking. With, as noted, no preliminary finding as to how

quickly the Prednisone operates to get Plaintiff back to working condition, and no limitations in the RFC – as had been suggested by state agency consultants – that would give Plaintiff a sit/stand option for those periods when his gout caused his "legs to give out," the fact that Plaintiff could run errands, do chores or take a daily walk on his own schedule does not serve as substantial evidence that he also could work at the level of this RFC.

The ALJ's decisions failed to fill the holes between the record evidence and its findings, and it lacked substantial evidence, thereby requiring remand. The Court's decision, however, expresses no opinion regarding the actual merits of Plaintiff's claim and the alleged work-preclusive impacts—if any—of his impairments.

## CONCLUSION

The R&R is not adopted, for the foregoing reasons, and the Commissioner's decision is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 30, 2024         /s/ *David A. Ruiz*
                                  David A. Ruiz
                                  United States District Judge